Case No. 22-10983

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

In the Matter of:  Highland Capital Management, L.P.,

      Debtor

---

The Dugaboy Investment Trust,

      Appellant

v.

Highland Capital Management, L.P.,

      Appellee

---

## OPENING BRIEF OF APPELLANT,
## THE DUGABOY INVESTMENT TRUST

---

Appeal from the United States District Court for
The Northern District of Texas, Dallas Division,
Honorable Brantley Starr; USDC No. 3:21-cv-01295-X

Douglas S. Draper, Esq.
**HELLER, DRAPER & HORN, L.L.C.**
650 Poydras Street, Suite 2500
New Orleans, LA 70130
Telephone:  (504) 299-3300
Facsimile:  (504) 299-3399

**ATTORNEYS FOR APPELLANT
THE DUGABOY INVESTMENT TRUST**

i

Case No. 22-10983

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

In the Matter of:  Highland Capital Management, L.P.,

      Debtor

_____

The Dugaboy Investment Trust,

      Appellant

v.

Highland Capital Management, L.P.,

      Appellee

_____

## CERTIFICATE OF INTERESTED PERSONS

_____

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case.  These representations are made so that the judges of this Court may evaluate possible disqualification or recusal:

1. **<u>Appellant filing this brief</u>:**

   **The Dugaboy Investment Trust**

   | | |
   |---|---|
   | Trustees: | Nancy Dondero |
   | | Grant Scott |
   | Beneficiary: | James Dondero |

Counsel:
Douglas Scott Draper, Esq.
Heller, Draper & Horn, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA 70130

**2. Debtor/Appellee:**

**Highland Capital Management, L.P.**

Counsel:
Melissa Sue Hayward, Esq.
Zachery Z. Annable, Esq.
Hayward P.L.L.C.
10501 N. Central Expy. Ste. 106
Dallas, TX 75231

Jeffrey N. Pomerantz
Pachulski Stang Ziehl & Jones, LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067

John A. Morris
Gregory V. Demo
Hayley R. Winograd
Pachulski Stang Ziehl & Jones, LLP
780 Third Avenue, 34th Floor
New York, NY 10017-2024

**3. Litigation Trustee:**

**Marc S. Kirschner**

<u>Counsel</u>:

Paige Holden Montgomery
Juliana L. Hoffman
Sidley Austin LLP
2021 McKinney Avenue, Suite 2000
Dallas, Texas 74201

Matthew A. Clemente
Dennis M. Twomey
Alyssa Russell
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603

Deborah J. Newman
Robert S. Loigman
Calli Ray
Kate Scherling
Anna Deknatel
Aaron M. Lawrence
New York, New York 10010


**4. Interested Parties:**

**UBS Securities, L.L.C.**
**UBS AG London Branch**
1285 Avenue of the Americas
New York, New York 10019

<u>Counsel</u>:

Andrew Clubok

Sarah Tomkowiak
Latham & Watkins, LLP
55 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304

Jeffrey E. Bjork
Kimberly A. Posin
Latham & Watkins LLP
35 South Grand Avenue, Ste. 100
Los Angeles California 90071

Asif Attarwala
Latham & Watkins LLP
330 N. Wabash Avenue, Ste. 2800
Chicago, Illinois 60611

By:  /s/ *Douglas S. Draper*
      Douglas S. Draper, Esq.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant The Dugaboy Investment Trust believes that oral argument would benefit the Court. This appeal presents the issue of whether a bankruptcy court has jurisdiction over a non-debtor entity affiliated with the debtor and over that non-debtor's assets, such that the bankruptcy court could approve a settlement by and among a creditor of the bankruptcy estate, the debtor, *and* the non-debtor affiliate under Federal Rule of Bankruptcy Procedure 9019.  The United States Bankruptcy Court for the Northern District of Texas and the United States District Court for the Northern District of Texas both held that the Bankruptcy Court had jurisdiction in this case to approve the settlement at issue among the debtor, Highland Capital Management, L.P. (the "Debtor"), creditor(s) UBS Securities, LLC and UBS AG London Branch ("UBS"), and the Debtor's affiliate, Highland Credit Opportunities, CDO, L.P. (n/k/a Highland Multi Strategy Credit Fund, L.P.)  ("Multi-Strat LP"), because the Settlement was "related to" the bankruptcy proceeding.  This is an important issue to resolve correctly, because if the lower courts' decisions are upheld, non-debtors stand to lose significant rights and protections in bankruptcy.

# **TABLE OF CONTENTS**

STATEMENT OF JURISDICTION.............................................................1

STATEMENT OF ISSUE ON APPEAL....................................................1

STATEMENT OF THE CASE...................................................................2

      A.    The Pre-Petition UBS Litigation Ends In A Judgment
           Against Third Parties, Not Highland ........................................2

      B.    Highland Seeks Chapter 11 Protection, And UBS Files A
           Proof Of Claim...........................................................................4

      C.    The Bankruptcy Court Confirms Highland's Plan Of
           Reorganization And Approves The UBS Settlement .................9

SUMMARY OF THE ARGUMENT ........................................................10

STANDARD OF REVIEW .....................................................................11

ARGUMENT ..........................................................................................11

      A.    The Bankruptcy Court Should Not Have Sanctioned The
           Settlement Between UBS And Multi-Strat LP Under Any
           Jurisdictional Theory ...............................................................12

      B.    The District Court's Reasoning For Finding "Related To"
           Jurisdiction Is Wrong...............................................................14

      C.    Multi-Strat LP's Assets, Defenses, And Counterclaims
           Were Not The Estate's To Compromise And Have No
           "Conceivable Effect" On The Estate .......................................17

CONCLUSION .......................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Beck Industries, Inc.*,
  479 F.2d 410 (2nd Cir. 1973) .....................................................18, 19

*In re FoodServiceWarehouse.com, LLC*,
  601 B.R. 396 (E.D. La. 2019)...............................................................15

*In re Guyana Dev. Corp.*,
  168 B.R. 892 (S.D. Texas 1994).........................................................17

*In re Lemco Gypsum, Inc.*,
  910 F.2d 784 (11th Cir. 1990) ...........................................................15

*In re SI Acquisition*,
   817 F.2d 1142 (5th Cir. 1987) ...........................................................17

*In re Tower Automotive, Inc.*,
  356 B.R. 598 (Bankr. S.D.N.Y. 2006)................................................19

*In the Matter of TXNB Internal Case*,
  483 F.3d 292 (5th Cir. 2007) .......................................................11, 12

*Wedgeworth v. Fibreboard Corp, et al.*,
  706 F.2d 541 (5th Cir.1983) ...............................................................17

*In re Winstar Communications, Inc.*,
  284 B.R. 40 (Bankr. D. Delaware 2002) ............................................19

*In re Zale Corp.*,
  62 F.3d 746 (5th Cir. 1995) ...................................................14, 15, 16

**Statutes**

28 U.S.C. § 157.......................................................................9, 10, 11, 12

28 U.S.C. § 158...........................................................................................1

28 U.S.C. § 1291.........................................................................................1

28 U.S.C. § 1334 .................................................................................. 9, 12

28 U.S.C. § 1334 ........................................................... 10, 11, 14, 16

28 U.S.C. § 1452 ...................................................................................... 18

## STATEMENT OF JURISDICTION

This Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 1291 because this is an appeal from a final judgment of the United States District Court for the Northern District of Texas, Dallas Division, sitting as a bankruptcy appellate court pursuant to 28 U.S.C. § 158(d).  On September 22, 2022, the District Court entered a *Memorandum Opinion and Order* (the "District Court Order")[1] affirming the Bankruptcy Court's *Order Approving Debtor's Settlement with UBS Securities LLC and UBS AG London Branch and Authorizing Actions Consistent Therewith,* (the "Settlement Approval Order")[2] which was the subject of the Underlying Appeal.

## STATEMENT OF ISSUE ON APPEAL

Whether the District Court, sitting as a bankruptcy appellate court, correctly held that the Bankruptcy Court had jurisdiction to approve a settlement between the Debtor, UBS, and Debtor affiliate Multi-Strat LP, where Multi-Strat LP is not a debtor in the bankruptcy proceeding and where its assets are not part of the Debtor's bankruptcy estate.

---

[1] ROA.22-10983.5723-5736 (RE Tab 3).

[2] ROA.22-10960.16-36.  *Debtor's Motion for Entry of an Order Approving Settlement with UBS Securities, LLC and UBS AG London Branch and Authorizing Actions Consistent Therewith* (the "Debtor's Motion") appears at ROA.22-10983.771-801.

## **STATEMENT OF THE CASE**

In this appeal, Dugaboy asks this Court to decide that the United States Bankruptcy Court for the Northern District of Texas lacked authority to approve a settlement between Highland, non-debtor UBS, and non-debtor Multi-Strat LP (the "Settlement"). Multi-Strat is an independent affiliate of the Debtor whose investors objected to the Settlement because the Settlement required Multi-Strat LP to make a settlement payment to UBS, even though Multi-Strat LP's assets do not belong to the Debtor's estate, and even though Multi-Strat LP received no release from the Debtor as a result of the payment for its benefit.[3]

### A.     The Pre-Petition UBS Litigation Ends In A Judgment Against Third Parties, Not Highland

The Settlement at issue in this appeal has its origins in pre-bankruptcy litigation filed by UBS against Highland and its affiliates in New York state court. Prior to the financial crisis, UBS had agreed to "warehouse" certain collateralized

---

[3] Multi-Strat is pooled investment fund, consisting of an offshore feeder fund and an onshore master fund. The master fund is Highland Multi-Strategy Credit Fund, L.P., a Delaware limited partnership (the "Master Fund"), and the offshore feeder fund is Highland Multi Strategy Credit Fund, Ltd., a Cayman Islands excepted company (the "Feeder Fund"). The Debtor is the investment manager of the Master Fund and its indirect general partner. Dugaboy is a limited partner of the Master Fund. ROA.22-10983.949, ¶ 8; ROA.22-10983.954, ¶ 18. The Settlement erroneously treats the Master Fund, the Feeder Fund, their direct and indirect subsidiaries, and their respective general partners as one entity and defines them as "Multi-Strat," even though all are separate entities and even though the Feeder Fund is not a party to any litigation filed by UBS. See Debtor's Omnibus Reply, as hereafter defined, ROA.22-10983.944-966, at ROA.22-10983.948, ¶ 7.

debt obligations ("CDOs") on behalf of Highland and its affiliates.[4]  In September 2008, UBS made a margin call in which it demanded that Highland and its affiliates post additional collateral to secure the CDO warehouse facility.[5]  When Highland and its affiliates failed to fulfill the margin call, UBS sued.

Specifically, UBS originally sued Highland, Highland Special Opportunities Holding Co. ("SOHC"), and Highland CDO Opportunity Master Fund, L.P. (the fund now known as Multi-Strat LP) in New York state court (the "New York Litigation").[6] Through amendments and additionally filed lawsuits, the defendants came to include not only Highland, SOHC and Multi-Strat LP, but also Highland Credit Strategies Master Fund L.P. ("HCS"), Highland Crusader Offshore Partners L.P. ("Crusader"), and Highland Credit Opportunities CDO L.P. (which the Debtor and UBS contend is part of Multi-Strat LP).[7]

The New York Litigation was split into two phases for trial.  The first phase ("Phase I") dealt primarily with UBS's contractual claims against Highland, SOHC, and Multi-Strat, as well as Highland's contractual counterclaims against UBS.[8]  The Phase I bench trial commenced on July 9, 2018, and the trial judge issued a judgment

---

[4] ROA.22-10983.5723-5736 (RE Tab 3); ROA.22-10983. 5724 (RE Tab 3); Debtor's Motion, ROA.22-10983.782, ¶s 18, 19, 20, 27; Debtor's Objection, ROA.22-10983.1336, ¶ 17, 18.

[5] ROA.22-10983.5723-5736 (RE Tab 3); ROA.22-10983.5723-5736 (RE Tab 3).

[6] Debtor's Objection, ROA.22-10983.1336, ¶ 17, 18.

[7] Dugaboy's Opposition, ROA.22-10983.893-894, ¶¶ 4, 5.

[8] Debtor's Motion, ROA.22-10983, ¶ 21, Dugaboy's Objection, ROA.22-10983, ¶ 4.

(the "New York Judgment") against SOHC and Highland CDO Opportunity Master Fund, L.P. (but not Highland) on July 27, 2018, in an amount in excess of $1 billion.[9]

The Phase II trial was to be focused on UBS's fraudulent transfer claims against Multi-Strat LP and others.[10] But the trial never happened; Highland sought chapter 11 protection, and the UBS litigation was stayed.[11]

## B.    Highland Seeks Chapter 11 Protection, And UBS Files A Proof Of Claim

Highland filed its bankruptcy petition under chapter 11 of the Bankruptcy Code (the "Code") on October 16, 2019, in the United States Bankruptcy Court for the District of Delaware (Case No. 19-12239 (CSS)). The Delaware Bankruptcy Court transferred venue of the case to the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (Case No. 19-34054-sgj11) on December 4, 2019.[12] The United States Trustee appointed the Official Committee of Unsecured Creditors (the "Creditor's Committee") on October 29, 2019, prior to the transfer of the case from Delaware to Texas.[13] UBS served as one of the

---

[9] Debtor's Motion, ROA.22-10983.783, ¶ 21; Dugaboy's Objection, ROA.22-10983.893, ¶ 4.

[10] Debtor's Objection ROA.22-10983.1329-1364; *Redeemer Committee of the Highland and Crusader Funds and the Crusader Funds' Objection to the Proof of Claim of UBS AG, London Branch and UBS Securities, LLC and Joinder in the Debtor's Objection,* ROA.22-10983.1366-1391.

[11] Dugaboy's Objection, ROA.22-10983.894, ¶ 6.

[12] *See* Debtor's Motion, ROA.22-10983.784, ¶ 23; Dugaboy's Objection ROA.22-10983.893, ¶ 1.

[13] Debtor's Motion, ROA.22-10983.784, ¶ 23.

members of the UCC. Thereafter, the Bankruptcy Court approved the appointment of an independent board of directors to manage the Debtor's general partner, Strand Advisors, Inc.[14] Ultimately, the Bankruptcy Court appointed one of those three independent board members, James Seery, as the Debtor's Chief Executive Officer and Chief Restructuring Officer.[15]

On June 26, 2020, UBS filed two identical proofs of claim in the bankruptcy, *Claim Nos. 190 and 191* (the "UBS Claim"), stemming from the New York Litigation.[16] Specifically, the UBS Claim asserted a general unsecured claim in the exact amount the New York Judgment, even though that judgment was not issued against Highland.

The Debtor (and others) initially objected to the UBS Claim on numerous grounds.[17] Ultimately, however, the Debtor entered into the Settlement with UBS

---

[14] *See Transcript of Hearing* on Debtor's Motion, conducted May 21, 2021, ROA.22-10983.5468.

[15] *See id.*

[16] *See* Exhibits 2 (UBS Claim No. 190) [ROA.22-10983.828-849] and 3 (UBS London Claim No. 191) [ROA.22-10983.850-871] to *Declaration of Robert J. Feinstein in Support of the Debtor's Motion for Entry of an Order Approving Settlement with UBS Securities LLC and UBS AG, London Branch and Authorizing Actions Consistent Therewith* [ROA.22-10983.809] (the "Feinstein Declaration").

[17] *See* Debtor's Objection, ROA.22-10983.1329-1364; *Redeemer Committee of the Highland and Crusader Funds and the Crusader Funds' Objection to the Proof of Claim of UBS AG, London Branch and UBS Securities, LLC and Joinder in the Debtor's Objection* [ROA.22-10983.1366-1391]. The Debtor also filed *Debtor's Motion for Partial Summary Judgment on Proof of Claim Nos. 190 and 191 of UBS Securities LLC and UBS AG, London Branch* [ROA.22-10983.1393-1446], seeking to limit UBS's Claim. The Redeemer Committee of the Highland Crusader Funds and the Crusader Funds each filed a *Motion for Partial Summary Judgment and Joinder in the Debtor's Motion for Partial Summary Judgment on Proof of Claim Nos. 190 and 191 of UBS AG,*

and sought Bankruptcy Court approval of the Settlement. The Settlement Agreement, attached as Exhibit 1 to the Feinstein Declaration, provided that: (1) UBS would be granted an allowed Class 8 General Unsecured Claim in the amount of $65 million and a Class 9 Subordinated General Unsecured Claim in the amount of $60 million; (2) Multi-Strat LP would pay UBS $18.5 million; (3) the Debtor would "cooperate with UBS and participate…in the investigation or prosecution of claims or requests for injunctive relief against…Multi-Strat LP [and others];" (4) UBS would release all claims against the Debtor and others (including Multi-Strat LP), but with various exceptions; (5) the Debtor would release all claims against UBS *only* (but not those against Multi-Strat LP); and (6) Multi-Strat LP would release all claims against UBS.[18] In other words, the Settlement Agreement not only compromised the UBS Claim against the Debtor, but also purported to bind Multi-Strat LP and other non-debtors to the Settlement with UBS.[19] More alarmingly, the Settlement obligated Multi-Strat LP to pay $18.5 million to UBS, purportedly in satisfaction of UBS's Phase II claims against Multi-Strat LP, "to be funded in part

---

*London Branch and UBS Securities LLC* [ROA.22-10983.1447-1487] (the "Partial Summary Judgment Motions"). The Bankruptcy Court granted the Partial Summary Judgment Motions pursuant to an *Order Granting Partial Summary Judgment Against UBS Securities LLC and UBS AG, London Branch on Proof of Claim Nos. 1990 and 191* [ROA.22-10983.1492-1500], entered on September 9, 2020, barring UBS from seeking recovery of certain amounts and barring UBS "from asserting any claim to impose alter ego liability on the Debtor…." ROA.22-10983.1498-1499.

[18] ROA.22-10983.815-817; ROA.22-10983.818-20.

[19] ROA.22-10983.812.

with certain Multi Strat [LP] assets that previously placed in escrow pursuant to an agreement between Multi-Strat [LP] and UBS (among other parties) entered into in May, 2020."[20]  And Multi-Strat LP was obligated to make this payment to UBS and to release its claims against UBS even though UBS gave a more limited release to Multi-Strat LP and Highland gave none.  Finally, the Settlement Agreement falsely states that each party to the Agreement was "adequately represented by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of the Agreement," when in fact Multi-Strat LP had no independent legal representation whatsoever.   To the contrary, Multi-Strat LP was at all times represented by Highland, and Highland's interim CEO/CRO executed the Agreement on Multi-Strat LP's behalf.[21]

Dugaboy—which owns a limited partnership interest in Multi-Strat LP and is directly and pecuniarily affected by the Settlement as it affects Multi-Strat LP[22]— and Get Good Nonexempt Trust ("Get Good") objected to the Debtor's Motion

---

[20] Debtor's Motion, ROA.22-10983.788, ¶ 35; *Settlement Agreement,* ROA.22-10983.816, § 1(b). The Debtor was not a party to the agreement in May 2020 (the "May 2020 Settlement") resulting in the placement of Multi-Strat LP's assets into escrow, nor did the Debtor seek approval of the May 2020 Settlement, which was entirely between non-debtor parties, including Multi-Strat LP and UBS.

[21] *See* Settlement Agreement, ROA.22-10983.11-14

[22] ROA.22-10983.5438; ROA.22-10983.5452-5453; ROA.22-10983.5496; ROA.22-10983.5508-5509.

seeking approval of the Settlement.[23]  Dugaboy primarily contested the portion of the Settlement that obligated Multi-Strat LP to pay UBS $18.5 million.[24]  Dugaboy also objected on the ground that the Bankruptcy Court lacks jurisdiction to approve the Settlement as between Multi-Strat LP and UBS, both of which are non-debtors.[25] In response, the Debtor filed an *Omnibus Reply in Support of Debtor's Motion for Entry of an Order Approving Settlement with UBS  Securities and UBS AG London Branch and Authorizing Actions Consistent Therewith* (the "Omnibus Reply"),[26] and UBS filed a *Reply in Support of Debtor's Motion for Entry of an Order Approving Settlement with UBS Securities LLC and UBS AG London Branch and Authorizing Actions Consistent* (the "UBS Reply").[27]

---

[23] Get Good was an appellant, together with Dugaboy, in the underlying appeal in the district court (Civil Action No. 3:21-CV-261-L) (the "Underlying Appeal"). After filing the Underlying Appeal, Get Good withdrew all of its claims against the Debtor, with prejudice.  As a result, Get Good is not an appellant in the instant appeal.

[24] ROA.22-10983.881-889; ROA.22-10983.890-926.  James Dondero also filed an *Objection to Debtor's Motion for Entry of an Order Approving Settlement with UBS Securities LLC and UBS AG London Branch and Authorizing Actions Consistent Therewith*, ROA.22-10983.927-939.

[25] Although Dugaboy also argued in its Objection that the Debtor lacked authority to commit Multi-Strat LP to the Settlement and that the Debtor is in a position of conflict to Multi-Strat LP, for which it is the general partner and Investment Manager, Dugaboy has not argued those issues in this appeal.

[26] ROA.22-10983.944-966, ROA.22-19083.891, filed September 14, 2021.

[27] ROA.22-10983.1280-1293, filed September 14, 2021.

**C.    The Bankruptcy Court Confirms Highland's Plan Of Reorganization And Approves The UBS Settlement**

On November 24, 2020, the Debtor filed its *Fifth Amended and Restated Plan of Organization* (the "Plan"). After conducting a two-day confirmation hearing, on February 22, 2021, the Bankruptcy Court confirmed the Plan over numerous objections, including objections lodged by Dugaboy.[28]

On May 21, 2021, the Bankruptcy Court held a hearing on the Debtor's Motion to approve the Settlement. Following the hearing, the Bankruptcy Court ruled from the bench that it was overruling all objections to the Debtor's Motion, granted the Motion, and approved the Settlement.[29] In its bench ruling, the Bankruptcy Court held that it had jurisdiction under 28 U.S.C. § 1334 and 157(b) to approve the Settlement as to Multi-Strat LP because that portion of the Settlement was "related to" the Debtor's bankruptcy case.[30] The Bankruptcy Court formally entered a Settlement Order on May 27, 2021.[31]

Dugaboy appealed the Settlement Order to the District Court, raising three issues on appeal. Of relevance here, the first issue raised by Dugaboy on appeal was

---

[28] ROA.22-10983.893, ¶s 3-4. The Plan appears at ROA.22-10983.4416-4481. The Bankruptcy Court's *Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (As Modified) and (ii) Granting Related Relief* appears at ROA.10983.2438-2527.

[29] ROA.22-10983.5606-5614.

[30] ROA.22-10983.5607; ROA.22-10983.5609-5610.

[31] ROA.22-10983.16-19.

whether the Bankruptcy Court erred in finding that it had jurisdiction to approve the Settlement between Multi-Strat LP and UBS, two non-debtors, involving assets that do not constitute property of the estate.[32]

On September 22, 2022, the District Court issued its Memorandum Opinion and Order affirming the Bankruptcy Court's Settlement Order in all respects.[33]  In doing so, the District Court specifically held that the Bankruptcy Court had "related to" jurisdiction to approve the Settlement as to Multi-Strat under 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a).[34]  From this ruling, Dugaboy now appeals.

## SUMMARY OF THE ARGUMENT

The District Court Order approving the Bankruptcy Court's Settlement Order should be reversed because the Bankruptcy Court lacked jurisdiction to approve any settlement between non-debtors UBS and Multi-Strat LP.  Contrary to the holding of the District Court, the Settlement is not "related to" the bankruptcy because Multi-Strat LP is a legally distinct entity from Highland with legally distinct liabilities from Highland and with legally distinct rights to defend itself and settle litigation involving UBS.  In addition, because Multi-Strat LP is a non-debtor, its assets do not comprise property of the Debtor's bankruptcy estate and never should have been

---

[32] Original Appellant Brief filed on Behalf of The Dugaboy Investment Trust and Get Good Nonexempt Trust, ROA.22-10983.5617-5648, at ROA.22-10983.5623.

[33] ROA.22-10983.5723-5736. (RE Tab 3).

[34] ROA.22-10983.5726-5730.

used to settle UBS's distinct claims against Highland. The only reason the Bankruptcy Court could even purport to exercise jurisdiction over a settlement between UBS and Multi-Strat is because Highland crafted a reason: it wrote itself into a Settlement that should have been an agreement between two third-parties represented by true independent counsel and overseen by the New York court presiding over the litigation against them. Bankruptcy court jurisdiction should not be manufactured, as it was in this case. Under the circumstances, the Bankruptcy Court and the District Court both erred in finding that 28 U.S.C. §§ 1334(b) and 157(a) confer jurisdiction on a bankruptcy court over claims by one non-debtor against another, involving property that is not property of the estate.

## STANDARD OF REVIEW

The District Court's ruling that the Bankruptcy Court had jurisdiction to approve the Settlement between Multi-Strat LP and UBS, both non-debtors whose assets and claims do not comprise part of the bankruptcy estate, is a legal determination that this Court reviews *de novo.*[35]

## ARGUMENT

The District Court Order's affirming the Bankruptcy Court's Settlement Order is wrong and should be reversed. In concluding that the Bankruptcy Court had jurisdiction to approve the Settlement, the District Court (like the Bankruptcy Court)

---

[35] *In the Matter of TXNB Internal Case*, 483 F.3d 292, 298 (5th Cir. 2007).

invoked "related to" jurisdiction pursuant to 28 U.S.C. §§ 157(b) and 1334. Specifically, the District Court surmised that "related to" jurisdiction exists because "UBS's claim against Multi-Strat LP 'involves the debtor's behavior.'"[36]   The District Court further opined that "related to" jurisdiction exists because the Settlement "constrained Highland's rights or freedom of action" by "requiring Highland to cause Multi-Strat LP to pay UBS."[37]   As explained below in greater detail, neither of these justifications makes any sense, nor does either support "related to" jurisdiction over the settlement between UBS and Multi-Strat LP.

The Debtor's behavior does not change the fact that for "related to" jurisdiction to exist, the proceeding must "conceivably affect the estate being administered."[38]   A settlement between two non Debtors where estate funds are not used to pay the settlement can have no conceivable affect on the estate being administered

### A.   The Bankruptcy Court Should Not Have Sanctioned The Settlement Between UBS And Multi-Strat LP Under Any Jurisdictional Theory

At the outset, it is critically important to understand that the Settlement that Highland brokered for Multi-Strat LP—*without* ensuring that Multi-Strat had

---

[36] ROA.22-10983.5728. (RE Tab 3).

[37] ROA.22-10983.5729. (RE Tab 3).

[38] *See In re TXNB*, 483 F 3rd at 298.

separate counsel and independent legal advice—significantly compromised Multi-Strat's rights (and the rights of its investors, including Dugaboy) while offering Multi-Strat very little, if any benefit.  There is no dispute that Multi-Strat LP's assets do not belong to the Debtor's estate.  There also is no dispute that Multi-Strat LP is an independent entity with its own rights and its own potential liabilities vis-à-vis UBS.  There is no dispute (and in fact Highland itself has argued) that Highland is not the alter ego of Multi-Strat LP and cannot be held liable on any judgment against Multi-Strat.   And there is no dispute that Highland served as Multi-Strat LP's investment manager at all relevant times, binding Highland to act in Multi-Strat LP's best interest when making decisions for that fund without regard to Highland's own. Yet Highland brokered a settlement for Multi-Strat in which Highland used Multi-Strat's assets for *Highland's* benefit, compromised Multi-Strat's potential claims against UBS while failing to secure similar mutual releases for Multi-Strat, misrepresented that Multi-Strat LP had the benefit of independent counsel in the transaction, and ultimately agreed to cooperate with UBS *against* Multi-Strat LP. And in the end, all Highland had to do to accomplish all of this was to make the Settlement Agreement a three-way agreement so that Highland could hide behind the cover of Bankruptcy Court approval.  A debtor should not be permitted to manipulate the parties to a settlement in order to create bankruptcy court jurisdiction.

That is not behavior that this Court should sanction, and the District Court's order approving the Settlement Order should be reversed.

## B.    The District Court's Reasoning For Finding "Related To" Jurisdiction Is Wrong

In any event, the District Court's reasoning for affirming the Bankruptcy Court's Settlement Order is fatally flawed. The District Court's initial justification for its ruling is that the settlement between UBS and Multi-Strat LP "involves the debtor's behavior."[39] According to the District Court, that distinguishes this case from *In re Zale Corp.*, 62 F.3d 746 (5th Cir. 1995), in which the Fifth Circuit held that an agreement between non-debtor entities was not "related to" the bankruptcy estate.[40] In *Zale Corp.*,[41] this Court addressed whether the bankruptcy court had jurisdiction to approve a three-way settlement between the debtor, the debtor's former directors, and the directors' D&O insurer.[42] But the potential claims at issue involved in a dispute relating to management of the bankruptcy estate. In assessing whether the Bankruptcy Court had "related to" jurisdiction to approve the settlement, the Fifth Circuit initially explained that "some nexus must exist between the related civil proceeding and the Title 11 case. Otherwise, 'an overbroad construction of §

---

[39] ROA.22-10983.5728. (RE Tab 3).

[40] ROA.22-10983.5727-5728. (RE Tab 3).

[41] 62 F.3d 746 (5th Cir. 1995).

[42] *Id.* at 749.

1334(b) may bring into federal court matters that should be left for state courts to decide.'"[43]  The Court then observed that "a large majority of cases reject the notation that bankruptcy courts have 'related to' jurisdiction over third party actions."[44]  As the Court explained:

> [A] third party action does not create related to jurisdiction when the asset in question is not property of the estate and the dispute has no effect on the estate.  Shared facts between the third-party action and a debtor-creditor conflict do not in and of themselves suffice to make the third-party action 'related to' the bankruptcy.  Moreover, judicial economy also cannot justify a court's finding jurisdiction over an otherwise unrelated suit.[45]

Likewise, in In *In re FoodServiceWarehouse.com, LLC*,[46] the court explained that:

> Two crucial points have emerged from the controlling jurisprudence in this area.  First, it is entirely possible for a bankruptcy estate and a creditor to own separate claims against a third party arising out of the same general series of events and broad course of conduct.  Therefore, the existence of common parties and shared facts between the debtor's bankruptcy and the creditor's cause of action does not necessarily mean that the claims asserted by the creditor are property of the estate.[47]

In this case, as in *Zale* and *FoodServiceWarehouse.com*, the lawsuit between UBS and Multi-Strat LP has no conceivable effect on the Debtor's estate.  Multi-Strat

---

[43] *Id.* at 752 (quoting *In re Lemco Gypsum, Inc.,* 910 F.2d 784, 789 (11th Cir. 1990) (citations omitted)).

[44] *Id.* at 753.

[45] 62 F.3d at 753-54.

[46] 601 B.R. 396 (E.D. La. 2019)

[47] 601 B.R. at 405. (Citations omitted).

LP's liability to UBS is not the Debtor's liability.  UBS's judgment (or potential

judgment) against Multi-Strat LP is not a judgment against the Debtor, as the Debtor

has repeatedly argued and acknowledged.[48]  The only possible difference between

the facts of *Zale* and the facts of this case that the District Court points to is that the

Debtor in this case served as the investment manager for the entity that UBS is suing.

According to the District Court, because Highland as investment manager "caused"

Multi-Strat LP's general partner to cause Multi-Strat to act, Highland's "behavior"

is supposedly at issue.  But where, as here, Highland's "behavior" relative to Multi-

Strat could not possibly subject Highland to liability for *Multi-Strat LP*'s actions,

that is a distinction without a difference.  The District Court's reasoning in this

regard must be rejected.[49]

The District Court's other justification for finding "related to" jurisdiction—

that the Settlement "constrained Highland's 'rights . . . or freedom of action'"

because the Settlement "required Highland to cause Multi-Strat LP to pay UBS"[50]—

---

[48] Debtor's Objection, ROA.22-10983.1329-1364.

[49] It is particularly problematic that the Bankruptcy and District Courts held that they have "related to" jurisdiction to approve a settlement between UBS and Multi-Strat LP that impacts Multi-Strat LP's rights in Phase II of the UBS litigation.  The UBS claims remaining to be litigated against Multi-Strat LP in Phase II of the New York Litigation are separate and distinct from the UBS Claim against the Debtor, notwithstanding the fact that they may have arisen out of related transactions and involve some of the same parties and are not "related to" the bankruptcy case, as contemplated in § 1334(b).  Multi-Strat LP should be free to settle or litigate UBS's Phase II state-law claims against it outside of the bankruptcy case.  The Settlement deprives Multi-Strat LP of that right, in a case, like *Zale,* where the limited partners were not given proper notice and where Multi-Strat LP had no opportunity to consult independent counsel or to opt out of the Settlement.

[50] ROA.22-10983.5729. (RE Tab 3).

is even more circular and specious.  The only reason that the settlement constrained Highland's rights is because *Highland structured it that way*.  This is not a situation where Highland was imposed upon or where the settling party insisted on the solution that impacted the bankruptcy estate.  If the District Court's reasoning is followed, then all a Debtor need do to create "related to" jurisdiction is to write itself into a settlement agreement involving non-debtor parties.  That is not how "related to" jurisdiction is supposed to work, and it should not be sanctioned by this Court.

### C.    Multi-Strat LP's Assets, Defenses, And Counterclaims Were Not The Estate's To Compromise And Have No "Conceivable Effect" On The Estate

Finally, the undisputed fact remains that Multi-Strat LP's assets were not Highland's assets to use to facilitate a settlement with UBS.[51]  Nor were Multi-Strat's potential defensive strategies or counterclaims in Phase II of the New York Litigation Highland's counterclaims to compromise.  It is not even the case that Highland's participation in a settlement between UBS and Multi-Strat was necessary to overcome the automatic stay applicable to Phase II: it is axiomatic that the automatic stay does not apply to co-defendants in a lawsuit.[52]  Thus, there was no barrier to UBS pursuing and settling the New York Litigation against Multi-Strat LP

---

[51] *See* Debtor Motion, ROA.22-10983.796, ¶ 53 (arguing that "the assets of a debtor's non-debtor subsidiaries are *not* the property of a debtor's estate") (citing *In re Guyana Dev. Corp.*, 168 B.R. 892, 905 (S.D. Texas 1994)).

[52] See *Wedgeworth v. Fibreboard Corp, et al.,* 706 F.2d 541, 544 (5th Cir.1983); *In re SI Acquisition,* 817 F.2d 1142, ns. 27 and 28 (5th Cir. 1987).

(without the Bankruptcy Court's intervention or blessing) at any time during the pendency of the bankruptcy proceeding. Indeed, without the self-serving Settlement crafted in part by Highland, the Bankruptcy Court would have no jurisdiction whatsoever over the dispute between UBS and Multi-Strat LP, much less approval of the settlement agreement between them.[53]

Thus, contrary to the finding of the Bankruptcy Court (approved by the District Court), the Settlement has no "conceivable effect" on the estate, other than one manufactured by the Debtor. In this regard, this case is similar in kind to *In re Beck Industries, Inc.*,[54] a case in which a third-party creditor sued a non-debtor wholly-owned subsidiary in state-court litigation. The debtor in *Beck* sought to enjoin the state-court litigation, invoking the bankruptcy court's "related to" jurisdiction. In holding that the bankruptcy court lacked jurisdiction, the Second Circuit stated:

> [The debtor's] sole interest in Subsidiary is its ownership of Subsidiary's outstanding stock. Ownership of all of the outstanding stock of a corporation, however, is not the equivalent of ownership of the subsidiary's property or assets…Even though the value of the subsidiary's outstanding shares owned by the debtor may be directly affected by the subsidiary's disputes with third parties, Congress did

---

[53] Neither the Debtor nor UBS ever sought to remove the remaining Phase II claims in the New York Litigation to the District Court under 28 U.S.C. § 1452, for referral to the Bankruptcy Court. Even if there had been any such attempt at removal, the Bankruptcy Court, as an Article I court, could not have made final, binding determinations in the lawsuit. It would only have had the power to make recommendations to the District Court.

[54] 479 F.2d 410 (2nd Cir. 1973).

not give the bankruptcy court exclusive jurisdiction over all controversies that in some way affect the debtor's estate.[55]

Likewise, in *In re Tower Automotive, Inc.,* another case involving a wholly-owned subsidiary, the Bankruptcy Court for the Southern District of New York held that "a lawsuit that impacts only the value of a debtor's subsidiary is not within the related to jurisdiction of the Bankruptcy Court."[56]    And in *In re Winstar Communications, Inc.*, a case quoted with approval by the *Tower Automotive* court, the Bankruptcy Court for the District of Delaware opined that an action which may have an impact on the value of a debtor's subsidiary:

> does not alter the estate's rights, liabilities, options or freedom of action.  If the court were the (sic) find this action was under the jurisdiction of the Bankruptcy Court, the decision would have the result of bringing every wholly owned subsidiary into every bankruptcy case regardless of the circumstances and without the safeguards afforded by schedules, statements of financial affairs, notices to creditors or meetings of creditors.[57]

As in these cases, the fact that Highland has an ownership interest in Multi-Strat LP has no impact on the estate.  UBS does not have a lien on the bankruptcy estate as a result of its lawsuit against Multi-Strat LP, nor can UBS legally pursue the bankruptcy estate for the debts of Multi-Strat LP.  In short, in the real world, how Multi-Strat manages, defends, or settles litigation involving UBS should have no

---

[55] 479 F.2d at 415 (citations and quotation marks omitted).
[56] 356 B.R. 598, 601 (Bankr. S.D.N.Y. 2006).

[57] 284 B.R. 40, 51 (Bankr. D. Delaware 2002).

impact on the bankruptcy case.  There is no "related to" jurisdiction under these circumstances.  The Courts below erred in holding otherwise.

## CONCLUSION

For all of the reasons set forth herein, Appellant Dugaboy respectfully requests that this Court reverse the District Court's order affirming the Bankruptcy Court's Settlement Order granting the *Debtor's Motion for Entry of an Order Approving Settlement with UBS Securities LLC and UBS AG London Branch and Authorizing Actions Consistent Therewith*, and, in particular, find that the Bankruptcy Court did not have jurisdiction to approve the Settlement Highland Multi-Strategy Credit Fund, L.P. and UBS Securities, LLC and UBS AG London Branch.  In addition, Appellant Dugaboy requests all further relief that the Court deems just and proper.

**RESPECTFULLY SUBMITTED** this 13ʰ day of December 2022.

**HELLER, DRAPER & HORN, L.L.C.**

By:  /s/ Douglas S. Draper
    Douglas S. Draper
    650 Poydras Street, Suite 2500
    New Orleans, LA 70130
    Telephone:  (504) 299-3300
    Fax: (504) 299-3399
    Email:  ddraper@hellerdraper.com

**ATTORNEYS FOR APPELLANT,**
**THE DUGABOY INVESTMENT TRUST**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on this, the 13th day of December 2022, a true and correct copy of the foregoing document was served on the counsel of record below via electronic service.

By: <u>/s/ Douglas S. Draper</u>
Douglas S. Draper
650 Poydras Street, Suite 2500
New Orleans, LA 70130
Telephone:  (504) 299-3300
Fax: (504) 299-3399
Email:  ddraper@hellerdraper.com

**ATTORNEYS FOR APPELLANT,
THE DUGABOY INVESTMENT TRUST**

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE AND TYPE-STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) in that this brief contains 4,909 words, excluding parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14-point type for text and Times New Roman 12-point type for footnotes.

Dated:  December 13, 2022.

By:  */s/ Douglas S. Draper*
Douglas S. Draper, Esq.