No. 22-10983

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

In the Matter of Highland Capital Management, L.P.,
Debtor.

## THE DUGABOY INVESTMENT TRUST,

## Appellant

## v.

## HIGHLAND CAPITAL MANAGEMENT, L.P.,

## Appellee

On Appeal from the United States District Court
Northern District of Texas
Case No. 3:21-CV-01295-X

## APPELLEE'S BRIEF

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz
John A. Morris
Gregory V. Demo
Jordan A. Kroop
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
(310) 277-6910

HAYWARD PLLC
Melissa S. Hayward
Zachery Z. Annable
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
(972) 755-7100

*Counsel for Appellee*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that:

(a)    There are no other debtors associated with this bankruptcy case other than Highland Capital Management L.P., and there are no publicly held corporations that own 10% or more of Appellee Highland Capital Management L.P., which is not a corporation or a parent corporation;

(b)    The following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1.    **Appellant:**
**The Dugaboy Investment Trust**

    *Counsel for Dugaboy:*

    HELLER, DRAPER & HORN, L.L.C.
    Douglas S. Draper
    650 Poydras Street, Suite 2500
    New Orleans, LA 70130
    Tel: (504) 299-3300

2.    **Appellee (Debtor):**
**Highland Capital Management, L.P.**

    *Counsel for Appellee:*

    PACHULSKI STANG ZIEHL & JONES LLP

| | |
|---|---|
| Jeffrey N. Pomerantz | John A. Morris |
| 10100 Santa Monica Blvd., 13th Floor | Gregory V. Demo |
| Los Angeles, CA 90067 | Jordan A. Kroop |
| Tel: (310) 277-6910 | 780 Third Avenue, 34th Floor |
| | New York, NY 10017-2024 |
| | Tel: (212) 561-7700 |

    HAYWARD PLLC
    Melissa S. Hayward
    Zachery Z. Annable
    10501 N. Central Expy, Ste. 106
    Dallas, Texas 75231
    Tel: (972) 755-7100

3. **Litigation Trustee:**
   **Marc S. Kirschner**

   *Counsel for Litigation Trustee:*

   SIDLEY AUSTIN LLP
   Paige Holden Montgomery              Matthew A. Clemente
   Juliana L. Hoffman                   Dennis M. Twomey
   2021 McKinney Ave., Suite 2000       Alyssa Russell
   Dallas, Texas 74201                  One South Dearborn Street
                                        Chicago, Illinois 60603

4. **Interested Party:**
   **UBS Securities, L.L.C.**
   **UBS AG London Branch**

   *Counsel for UBS:*

   LATHAM & WATKINS LLP
   Andrew Clubok                        Jeffrey E. Bjork
   Sarah Tomkowiak                      Kimberly A. Posin
   55 Eleventh Street NW, Suite 1000    35 South Grand Ave., Suite 100
   Washington, DC 20004                 Los Angeles, California 90071


   */s/Zachery Z Annable*
   Zachery Z. Annable

DOCS_NY:47055.11 36027/003

## STATEMENT REGARDING ORAL ARGUMENT

Appellee respectfully submits that oral argument is unwarranted and should not be granted so as to preserve judicial resources and reduce the costs to the Debtor's economic constituents. The single issue in this appeal concerns the Bankruptcy Court's jurisdiction under 28 U.S.C. § 1334 amid factual circumstances not in dispute. The District Court easily and unequivocally agreed with the Bankruptcy Court that "related-to" jurisdiction existed and was properly exercised. Nothing about this issue raises novel, unusual, or potentially precedent-setting implications. Because the briefs will more than adequately argue the parties' positions on this sole legal issue, this Court's decision process would not be aided by oral argument.

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF ISSUE AND STANDARD OF REVIEW ...................... 1

II.   STATEMENT OF THE CASE ....................................................... 1

III.  SUMMARY OF ARGUMENT ..................................................... 7

IV.   ARGUMENT ........................................................................... 9

    A.   The Bankruptcy Court Properly Approved Appellee's Ability to Enter the Settlement on Behalf of Multi-Strat Under 11 U.S.C. § 363(b) ........................................................................ 9

    B.   Related-To Jurisdiction in the Fifth Circuit ....................... 10

    C.   The Bankruptcy Court Had Related-To Jurisdiction ......... 11

    D.   This Case Does Not Resemble *Zale* or Appellant's Other Cases ...... 14

V.    CONCLUSION ....................................................................... 18

# TABLE OF AUTHORITIES

## CASES

*Burch v. Freedom Mortg. Corp. (In re Burch),*
   835 F. App'x 741 (5th Cir. 2021) ............................................................11

*Eastover Bank for Sav. v. Sowashee Venture (In re Austin Dev. Co.),*
   19 F.3d 1077 (5th Cir.), *cert. denied,* 115 S. Ct. 201 (1994) ..............................15

*Equity Broad. Corp. v. Shubert (In re Winstar Commc'ns, Inc.),*
   284 B.R. 40 (Bankr. D. Del. 2002) ................................................... 18, 19

*In re Beck Indus., Inc.,*
   479 F.2d 410 (2d Cir. 1973) ...................................................... 17, 18, 19

*In re Thomas,*
   2020 Bankr. LEXIS 1364 (Bankr. W.D. Tenn. May 8, 2020) ............................10

*Natixis Funding Corp. v. Genon Mid-Atlantic, L.L.C. (In re Genon Mid-Atlantic Dev., L.L.C.),*
   42 F.4th 523 (5th Cir. 2022) ...................................................... passim

*Rivet v. Regions Bank,*
   108 F.3d 576 (5th Cir. 1997) ..............................................................10

*Tower Auto. Mexico, S.A. de R.L. de C.V. v. Grupo Proeza, S.A. de C.V. (In re Tower Auto., Inc.),*
   356 B.R. 598 (Bankr. S.D.N.Y. 2006) .............................................. 17, 18, 19

*Universal Oil Ltd. v. Allfirst Bank (In re Millenium Seacarriers, Inc.),*
   419 F.3d 83 (2d Cir. 2005) ..............................................................14

## STATUTES

11 U.S.C. § 362(a) ...............................................................................3

11 U.S.C. § 363(b) ................................................................ 7, 9, 10, 13

11 U.S.C. § 541(a) ...............................................................................9

28 U.S.C. § 1334 ........................................................................ 10, 14

28 U.S.C. § 1334(b) ...............................................................................9

28 U.S.C. § 157(a) ...............................................................................9

28 U.S.C. § 157(b) ..............................................................................10

## I.    STATEMENT OF ISSUE AND STANDARD OF REVIEW[1]

Appellee Highland Capital Management, L.P., the reorganized debtor in the chapter 11 bankruptcy case below, agrees with Appellant's statement of the sole issue and the applicable standard of appellate review.

## II.    STATEMENT OF THE CASE

In addition to including several pages' worth of background entirely irrelevant to the sole issue as to whether the Bankruptcy Court had related-to jurisdiction to issue its ruling, Appellant grossly mischaracterizes essential facts concerning the underlying litigation among UBS, Appellee, Multi-Strat, and others, the basic nature and components of the Settlement, and even the relationship between Multi-Strat and Appellee.

The facts relevant to this appeal are as follows:

- UBS is the largest creditor in Appellee's bankruptcy case and was a member of the Official Committee of Unsecured Creditors.

- In February 2009, UBS sued Highland CDO Opportunity Master Fund, L.P. and Highland Special Opportunities Holding Company (collectively, the "**Funds**") in New York state court. UBS subsequently amended its complaint to add five new defendants, including Multi-Strat, an investment vehicle directly and

---

[1] For the Court's convenience, capitalized but undefined terms used in this brief have the meanings given to them in the *Opening Brief of Appellant, The Dugaboy Investment Trust* (the "**Opening Brief**") [Doc. 00516577525]. Citations to "**ROA**" are to the Record on Appeal.

indirectly controlled by Appellee,[2] against whom UBS asserted actual and constructive fraudulent transfer claims based on transfers exceeding $230 million.

- In June 2010, UBS added Appellee as a defendant alleging, among other things, that Appellee: (a) orchestrated a series of fraudulent transfers by and among the Funds and Multi-Strat,[3] among others, to make the Funds judgment-proof; (b) breached the implied covenant of good faith and fair dealing by causing the Funds to avoid paying amounts allegedly owed to UBS; and (c) was liable as the Funds' alter ego. Both actions were subsequently consolidated.[4]

- In November 2019, the New York court entered judgment totaling more than $1 billion against the Funds. A second trial phase was scheduled to consider UBS's claims against Appellee and Multi-Strat, among other entities, for, among other things, their alleged role in fraudulently transferring assets.

---

[2] "**Multi-Strat**" (f/k/a Highland Credit Opportunities CDO, L.P.) refers, collectively, to Highland Multi Strategy Credit Fund, L.P. ("**Multi-Strat LP**"), a master fund, and Highland Multi Strategy Credit Fund, Ltd. ("**Multi-Strat LTD**," and together with Multi-Strat LP, "**Multi-Strat**"), an offshore feeder fund into Multi-Strat LP. Multi-Strat acts through its general partner, Highland Multi Strategy Credit Fund GP, L.P. ("**MSCF GP**"), and its investment manager, Appellee. Appellee owns and controls MSCF GP's general partner and is its sole limited partner. The District Court called Appellant's attempts to draw a distinction between Multi-Strat LP and Multi-Strat LTD "myopic" and an attempt "to bamboozle this Court …." *Memorandum Opinion and Order,* U.S. District Court, N.D. Tex., Sept. 22, 2022 (the "**DC Opinion**"), at 12, ROA.5734.

[3] Appellee holds, directly and indirectly, 58.70% of Multi-Strat's interests. The balance of Multi-Strat's interests are held by entities affiliated with or controlled by James Dondero—Appellee's founder and ousted Chief Executive Officer.

[4] UBS's claims against Appellee were described in *Debtor's Motion for Entry of an Order Approving Settlement with UBS Securities LLC and UBS AG, London Branch and Authorizing Actions Consistent Therewith*. ROA.771–801. In its Opening Brief, Appellant only mentions once, in passing, that the Settlement resolved more than $1 billion in claims UBS brought directly against Appellee in the bankruptcy case.

2

- UBS's claims against both Appellee and Multi-Strat arose from the same conduct: the fraudulent transfers and other actions allegedly orchestrated by Appellee (through James Dondero) to strip the Funds of assets and make them judgment-proof. UBS's claims against Multi-Strat were always completely intertwined with UBS's claims against Appellee. Accordingly, UBS could not settle its claims against Multi-Strat unless and until UBS settled its claims against Appellee because of Appellee's role as Multi-Strat's control person in Multi-Strat's alleged misconduct and malfeasance.[5]

- The second phase of UBS's suit was automatically stayed under Bankruptcy Code § 362(a) when Appellee filed its chapter 11 petition.

- In June 2020, UBS filed two essentially identical claims for more than $1 billion against Appellee's bankruptcy estate, alleging Appellee was liable for the New York judgment against the Funds because it (a) breached duties to UBS, (b) caused fraudulent transfers to and from Multi-Strat, among others, to frustrate UBS's ability to recover from the Funds, and (c) was the Funds' alter ego.

---

[5] *See Transcript of Proceedings Before the Honorable Stacey G.C. Jernigan,* May 21, 2021, at 15:8–17:8. ROA.5440–42. *See also* DC Opinion at 5, ROA.5727 (noting with approval Appellee's contention that Appellee's "interests are 'inextricably bound up with the Multi-Strat-related portions of that agreement.'")

- In January 2021, after months of litigation and mediation (both conducted in the Bankruptcy Court), Appellee, Multi-Strat, and UBS reached a settlement in principle resolving UBS's claims against Appellee and Multi-Strat.

- Because Multi-Strat was controlled exclusively by MSCF GP (which was controlled by Appellee) and Appellee, as exclusive investment manager, the settlement of UBS's claims against Multi-Strat could only be effectuated through Appellee's exercise of its control rights as set forth in Multi-Strat's governing documents and investment management agreement.[6]

- In February 2021, the Bankruptcy Court entered its *Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief* ("**Confirmation Order**"),[7] which confirmed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* (the "**Plan**").[8] The Plan provides for the monetization of Highland's assets and the distributions of the proceeds to creditors.[9] Distributions to creditors require the resolution of disputed claims. Because of the

---

[6] *See* Bankruptcy Court's *Order Approving Debtor's Settlement with UBS Securities LLC and UBS AG London Branch and Authorizing Actions Consistent Therewith*, ROA.119 ("**Bankruptcy Court Order**").

[7] ROA.610–99.

[8] ROA.544–609.

[9] Plan, Art. IV.C., ROA.583

size of UBS's claims, failure to resolve them would largely frustrate any meaningful distributions to creditors.

- In or around February 2021, after that initial UBS-related settlement was reached, Appellee discovered a brazen, secret conspiracy among Mr. Dondero and his associates to fraudulently cause the Highland-controlled Funds, among others, to transfer more than $300 million in face amount of cash and securities to an offshore company owned by Mr. Dondero and Highland's former general counsel, Scott Ellington. The transfers were designed to hide assets and further make the Funds judgment-proof—conduct substantially similar to the conduct underlying UBS's claims against Appellee and Multi-Strat. Mr. Dondero and his confederates hid these transfers from UBS, Appellee's court-appointed independent board of directors,[10] and the Bankruptcy Court, covering up the conspiracy during Appellee's bankruptcy case. Notwithstanding their conspiratorial efforts, Appellee discovered the fraudulent actions and disclosed them to UBS (and the Bankruptcy Court), causing the parties to revisit the earlier settlement and enter into the Settlement.

- In March 2021, UBS, Appellee, and Multi-Strat documented the Settlement resolving UBS's $1 billion claim against the estate as well as its

---

[10] Appellant alleges the independent board was appointed "to manage the Debtor's general partner, Strand Advisors, Inc." Opening Brief at 14. While the independent board sat at Strand Advisors, Inc., it was appointed to oversee and manage Appellee and its operations.

intertwined claims against Multi-Strat.[11] The Settlement granted UBS $125 million in allowed unsecured claims against Appellee's estate, required Multi-Strat to pay UBS approximately $18.5 million to settle UBS's fraudulent transfer claims against Multi-Strat, and provided for mutual releases among the parties.

•    As mentioned above, because UBS's claims against Appellee and Multi-Strat all pertained to deeply inter-related transactions with a singular purpose—to frustrate UBS's ability to recover its losses—no one claim could be resolved without resolving the others. Appellant's characterization of the Settlement as "between Multi-Strat [] and UBS, two non-debtors, involving assets that do not constitute property of the estate"[12] is—to quote the District Court—"wrong" and a self-serving fiction the District Court rightly rejected.[13]

Ultimately, there is only one question before this Court—did the Bankruptcy Court have jurisdiction to approve the Settlement? The Bankruptcy Court said "yes," and the District Court agreed. Both courts found jurisdiction existed because: (a) the Settlement resolved UBS's interconnected claims against Appellee and Multi-Strat;

---

[11] The Settlement is Exhibit 1 to *Declaration of Robert J. Feinstein in Support of Debtor's Motion for Entry of an Order Approving Settlement with UBS Securities LLC and UBS AG, London Branch and Authorizing Actions Consistent Therewith,* ROA.812–27.

[12] Opening Brief at 10.

[13] DC Opinion at 5, ROA.572: "That's wrong. The parties executed a single settlement agreement, which listed Highland [*i.e.*, Appellee], Multi-Strat [], and UBS as parties and signatories. UBS was willing to make that agreement only after Highland agreed to give UBS two unsecured claims for over $60 million each, Multi-Strat [] agreed to pay over $18 million, and Highland agreed to release its claims against UBS."

(b) Appellee was the only party authorized and able—through its control rights over Multi-Strat—to cause Multi-Strat to enter into the Settlement; and (c) Appellee's exercise of its control rights over Multi-Strat constituted a use of estate property and required Bankruptcy Court approval under Bankruptcy Code § 363(b).[14]

## III.    SUMMARY OF ARGUMENT

In addition to seeking authority to compromise UBS's claims against Appellee, Appellee asked the Bankruptcy Court for authority to use property of the bankruptcy estate (that is, Appellee's contractual right to manage and control Multi-Strat) outside of the ordinary course of business under Bankruptcy Code § 363(b) to cause Multi-Strat to enter into the Settlement. These exclusive management and control rights constituted Appellee's property, meaning that the Settlement directly involved property of the bankruptcy estate. It is beyond peradventure that the Bankruptcy Court had core jurisdiction (far more than related-to jurisdiction) over a chapter 11 debtor's request to use property of the estate outside the ordinary course of business under Bankruptcy Code § 363(b). The Bankruptcy Court granted the motion, ruling Appellee's use of its management and control rights to cause Multi-Strat to enter into the Settlement was a sound exercise of its business judgment.

---

[14] As part of a broader portion of its Statement of the Case concerning the would-be "unfairness" of the Settlement to Multi-Strat, Appellant argues that Multi-Strat lacked independent counsel in connection with the Settlement. The District Court found it all unpersuasive. DC Opinion at 12, ROA.5734. Appellant does not rely on these allegations in its Opening Brief, conceding that none of Appellant's gripes about the Settlement's "fairness" affects the sole jurisdictional issue now before this Court: "[Appellant] has not argued those issues in this appeal." Opening Brief at 8.

Appellant's attempt to characterize the Settlement as an agreement between two non-debtors that had no impact on Appellee's bankruptcy estate is wrong. The Settlement's provisions settling claims between UBS and Multi-Strat were economically and legally bound to and interdependent with the provisions that settled claims between UBS and Appellee. Settlements among all parties were part of an integrated, multi-faceted agreement to which Appellee was an essential and indispensable party. The Bankruptcy Court had jurisdiction over the settlement between UBS and Appellee—Appellant concedes that—and, therefore, had jurisdiction over the entire integrated agreement.

In accordance with this Circuit's precedents, including a case this Court recently decided,[15] the approval of a settlement among several parties, including the chapter 11 debtor, that implicates property of the bankruptcy estate, resolves claims against the bankruptcy estate, directly affects a reorganized debtor's rights and obligations, and is a necessary step in fully consummating a liquidating Plan also falls within a bankruptcy court's "related-to" jurisdiction under 28 U.S.C. §§ 157(a) and 1334(b).

This Court should affirm.

---

[15] *Natixis Funding Corp. v. Genon Mid-Atlantic, L.L.C. (In re Genon Mid-Atlantic Dev., L.L.C.)*, 42 F.4th 523 (5th Cir. 2022) ("***Natixis***").

## IV.  ARGUMENT

This appeal turns entirely on whether a bankruptcy court has "related-to" jurisdiction under 28 U.S.C. § 1334(b) to approve an interdependent, multi-party settlement agreement among a chapter 11 debtor, its largest creditor, and a non-debtor entity the debtor controlled but against which the same creditor also had related claims. The parties do not dispute the applicable legal principles bearing on this straightforward question.

### A.  The Bankruptcy Court Properly Approved Appellee's Ability to Enter the Settlement on Behalf of Multi-Strat Under 11 U.S.C. § 363(b)

Multi-Strat can only act through its general partner, MSCF GP, and its investment manager—that is, a wholly-owned and controlled subsidiary of Appellee and Appellee, respectively. Any settlement of UBS's claims against Multi-Strat therefore required the use of Appellee's management and control rights.

A debtor's management and control rights are property of Appellee's bankruptcy estate under Bankruptcy Code § 541(a).[16] Because the contemplated settlement was outside the ordinary course of business, Appellee's exercise of its control rights required authority from the Bankruptcy Court (after notice and

---

[16] DC Opinion at 6–7, ROA.5728–29 ("Thus, Highland rightly points out that it 'could not exercise its management and control rights over Multi-Strat without exercising control over property of its bankruptcy estate'"); *see also In re Thomas*, 2020 Bankr. LEXIS 1364 at *31 (Bankr. W.D. Tenn. May 8, 2020) (a debtor's membership interest in an LLC, including its governance rights, became property of the estate on the petition date).

hearing) under Bankruptcy Code § 363(b), which controls the requirements and circumstances under which Appellee "may use … property of the estate." Proceedings under Bankruptcy Code § 363(b) "arise in" or "arise under" the Bankruptcy Code (or both), giving the Bankruptcy Court "core" jurisdiction—not just "related to" jurisdiction—to approve Highland's use of its control rights to cause Multi-Strat to enter into the Settlement.[17]

This Court could affirm the Bankruptcy Court's approval of the Settlement on that basis alone. Of course, the Bankruptcy Court also had "related-to" jurisdiction over the Settlement.

## B.    Related-To Jurisdiction in the Fifth Circuit

Congress granted bankruptcy courts jurisdiction over, among other things, "all civil proceedings … related to cases under" the Bankruptcy Code. This Court holds that a proceeding "relates to" a case under the Bankruptcy Code if "the outcome of [the non-bankruptcy] proceeding could conceivably have any effect on the estate being administered in bankruptcy."[18]

---

[17] *See, e.g., Rivet v. Regions Bank,* 108 F.3d 576 (5th Cir. 1997) (proceedings under Bankruptcy Code § 363(b) are core proceedings under 28 U.S.C. § 157(b) over which the bankruptcy court has exclusive "arising in" jurisdiction under 28 U.S.C. § 1334); Bankruptcy Court Order, ROA.122:

> The Court finds that the Debtor, in its capacity as investment manager of Multi-Strat, exercised sound business judgment in causing Multi-Strat to enter into the Settlement Agreement. Pursuant to Section 363(b) of the Bankruptcy Code, the Debtor, in its capacity as investment manager of Multi-Strat, is authorized to cause Multi-Strat to settle the claims UBS has asserted against Multi-Strat in the State Court …

[18] *Burch v. Freedom Mortg. Corp. (In re Burch)*, 835 F. App'x 741, 748 (5th Cir. 2021).

This Court explained related-to jurisdiction somewhat differently in *Zale*: "For the bankruptcy court to have subject matter jurisdiction, therefore, *some nexus* must exist between the related civil proceeding and the Title 11 case."[19]

This Court's most recent re-affirmation of the standard for related-to jurisdiction came just a few months ago in *Natixis*:

> A proceeding relates to a bankruptcy case if "the outcome of that proceeding could conceivably have any effect" on the debtor's estate. … 'Related-to jurisdiction' thus includes "any litigation" that "could alter the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt estate."[20]

### C.    The Bankruptcy Court Had Related-To Jurisdiction

The "conceivably have any effect" standard is easily met here. The Bankruptcy Court possessed at least related-to jurisdiction. Appellant does not and cannot credibly quarrel with any of the following facts demonstrating how the Settlement directly and materially (not just conceivably) affected Appellee's bankruptcy estate. The Settlement:

---

[19] *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 752 (5th Cir. 1995) (emphasis added). Appellant argues extensively from *Zale*. But *Zale* is inapposite. As this Court specifically noted, the settlement's connection to the bankruptcy case in *Zale* was particularly tenuous—the debtor was not a party to the settlement, no property of the estate was involved, and the settlement did not affect the bankruptcy estate in any way. *Id.* at 751.

[20] *Natixis*, 42 F.4th at 534 (citations omitted). *Natixis* addressed whether related-to jurisdiction existed for a post-confirmation dispute, applying the test for post-confirmation related-to jurisdiction: whether the dispute 'pertains to the implementation or execution' of the [] reorganization plan." *Id.* at 304. After analyzing the facts, this Court found the bankruptcy court had post-confirmation, related-to jurisdiction over a multi-party settlement agreement involving both debtors and non-debtors. If this Court found related-to jurisdiction in *Natixis* under the stricter post-confirmation standard, it should have no issues during so here under the more liberal "conceivable effect" test.

- Resolved more than a decade of complicated and interconnected litigation to which Appellee and Multi-Strat were central party defendants;

- Resulted in the execution of one integrated settlement between, among others, Appellee, Multi-Strat, and UBS, resolving UBS's claims against Multi-Strat for $18.5 million and UBS's $1 billion claim against Appellee—the largest claim in the bankruptcy case—for allowed claims of $125 million in aggregate, and providing for various other types of consideration, the removal of any one type of which would alter the nature, value, mutuality, and give-and-take of the bargain being struck and documented in the Settlement;

- Required Appellee, both in its personal capacity and as investment manager to Multi-Strat, to release claims against UBS;[21]

- Required UBS to release claims against Appellee and Multi-Strat;[22]

- Required Appellee to exercise its control over Multi-Strat (*i.e.*, property of the bankruptcy estate) to cause Multi-Strat (of which Appellee owns 58.70%) to enter into the Settlement, which required Bankruptcy Court approval under Bankruptcy Code § 363(b); and

- By resolving the largest claim against the estate (which could be done only with the concomitant resolution of UBS's claims against Multi-Strat), enabled

---

[21] Settlement § 3(b), ROA.819–20.
[22] Settlement § 3(a), ROA.818–19.

12

Appellee to make material distributions to its prepetition creditors, the principal component in the "execution" of the Plan.[23]

These facts firmly establish the "nexus" between Multi-Strat's participation in the Settlement and Appellee's bankruptcy estate as well as the Settlement's "conceivable" (significant, real) effect on the bankruptcy estate, its assets, and Appellee's ability to satisfy its obligations under the Plan. In light of all these facts, the District Court ruled that the Bankruptcy Court had jurisdiction to consider all the integrated and inter-connected components of the Settlement, including those involving the claims between Multi-Strat and UBS. The Settlement—which resolved multi-party litigation against *both* Appellee and Multi-Strat—implicated property of Appellee's bankruptcy estate (creating *in rem* jurisdiction)[24] and dramatically altered Appellee's "rights [and] liabilities … [and] influence[d] the administration of [Appellee's] estate."[25] The Bankruptcy Court possessed related-to

---

[23] *See Natixis*, 42 F.4th at 534.

[24] 28 U.S.C. § 1334(e): "The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction—(1) of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate …"; *see, e.g.*, *Universal Oil Ltd. v. Allfirst Bank (In re Millenium Seacarriers, Inc.)*, 419 F.3d 83, 96 (2d Cir. 2005) (bankruptcy court has *in rem* jurisdiction over all property of the bankruptcy estate).

[25] *Natixis*, 42 F.4th at 534.

jurisdiction. The Settlement's own terms belie Appellant's sophistry and betray Appellant's "zeal to bamboozle this Court" by omitting critical facts.[26]

### D.     This Case Does Not Resemble *Zale* or Appellant's Other Cases

Appellant relies heavily on *Zale* to support its position that related-to jurisdiction does not exist. Appellant is wrong. This Court took pains to compare the proceedings in *Natixis* with those in *Zale* and found related-to jurisdiction in the former and not in the latter. The case now before this Court also stands in sharp contrast to the third-party proceeding in *Zale*. Consider this comparison:

| *Highland* | *Zale* |
|---|---|
| Settlement involved affirmative claims brought directly against Appellee and its bankruptcy estate by UBS, one of the estate's largest unsecured creditors. | The "actions at issue" were "between noncreditors … and a nondebtor … a large majority of cases reject the notion that bankruptcy courts have 'related to' jurisdiction over third-party actions."[27] |
| UBS is Appellee's largest prepetition creditor and was a member of the Official Committee of Unsecured Creditors[28] and the reorganized debtor's oversight committee.[29] | "Feld and NUFIC are not parties to the bankruptcy …."[30] |

---

[26] DC Opinion at 12, ROA.5734. Appellant's argument that Appellee "[wrote] itself into a settlement agreement involving non-debtor parties" [Opening Brief at 17] is as dishonest as it is inflammatory. The Settlement is part of the record. ROA.812–27. As this Court can easily appreciate by reading it, Appellee was an indispensable party to the Settlement.

[27] *Zale*, 62 F.3d at 751–52.

[28] Plan, Art. I.B.37, ROA.712; Confirmation Order, ¶ 8, ROA.617–18.

[29] Confirmation Order, ¶ 8, ROA.617–18; *Claimant Trust Agreement* at 5, ROA.2161.

[30] *Zale*, 62 F.3d at 751.

| *Highland* | *Zale* |
|---|---|
| Settlement required Appellee to exercise control over property of the bankruptcy estate. | "[C]ourts have held that a third-party action does not create 'related to' jurisdiction when the asset in question is not property of the estate …."[31] |
| Settlement contained a release of claims Appellee may have had against UBS, implicating additional property of Appellee's bankruptcy estate.[32] | "Feld and NUFIC argue that their bad faith claims against CIGNA do not relate to the bankruptcy because the claims are not property of the estate and they have no effect on the estate. We agree."[33] |
| Settlement allowed $125 million in claims against Appellee's bankruptcy estate in UBS's favor and favorably resolved the UBS claims against Multi-Strat, in which Appellee is the largest investor. | The "tort claims do not implicate an independent obligation of Zale … the settlement cannot provide the basis for jurisdiction over the bad faith claims."[34] |
| Multi-Strat could only act through Appellee, as investment manager, and MSCF GP. | "Zale had no authority to act on Feld [*sic*] or NUFIC's behalf; therefore, Zale could not jeopardize their interests through its consent."[35] |

---

[31] *Id.* at 753 (citing, among others, *Eastover Bank for Sav. v. Sowashee Venture (In re Austin Dev. Co.)*, 19 F.3d 1077, 1084 (5th Cir.), *cert. denied,* 115 S. Ct. 201 (1994)).

[32] ROA.819–20.

[33] *Zale*, 62 F.3d at 755.

[34] *Id.* at 756.

[35] *Id.*, n.26.

DOCS_NY:47055.11 36027/003

In an attempt to shoehorn the Settlement into a framework more resembling *Zale*, Appellant mischaracterizes the Settlement as solely "between two non Debtors [*sic*] where estate funds are not used to pay the settlement …"[36] As the District Court correctly noted, this is also "wrong … [The] parties executed a single settlement agreement, which listed [Appellee], Multi-Strat [], and UBS as parties and signatories." [37]

The uncontroverted facts appearing in the record and summarized above—but essentially ignored by Appellant—amply establish the "nexus" between the Settlement and the bankruptcy estate notably absent in *Zale*. These facts—which show how the Settlement clearly, directly, and materially affected the administration of Appellee's bankruptcy estate—created related-to jurisdiction at least.

Appellant relies on three other cases—none from this Circuit—for the proposition that "the Settlement has no 'conceivable effect' on the estate,"[38] once again ignoring Appellee's substantial economic and property interests implicated in the Settlement.

---

[36] Opening Brief at 12. Appellant would have this Court read the District Court's one statement regarding "the debtor's behavior"—a phrase taken from *Zale* to describe but one basis for related-to jurisdiction—entirely out of context and then believe that the District Court found related-to jurisdiction based solely on that one statement, rather than on a complete appreciation of the entire Settlement.

[37] DC Opinion at 5, ROA.5727.

[38] Opening Brief at 18.

DOCS_NY:47055.11 36027/003

The *Beck Industries* case[39] involved a settlement that did not resolve claims against the debtor and did not implicate the debtor's property interests. The settlement at issue in *Beck Industries* bears no resemblance to the Settlement here.

*Tower Automotive*[40] is equally unavailing. Following *Beck*, the bankruptcy court in *Tower Automotive* noted that the only conceivable effect the litigation between two non-debtors could have on the debtor is a potential change in the value of the debtor's stock in its non-debtor subsidiary. Again, nothing in that case indicated that the litigation involved claims directly against the debtor or the use of property of the debtor's bankruptcy estate. The Settlement here involves all that. *Tower Automotive* is inapposite.

So is *Winstar*.[41] Like *Tower* and *Beck*, nothing in *Winstar* indicates that the proceedings in that case involved direct claims against the debtor or implicated property of the bankruptcy estate. Instead, the court there noted that "the Stipulation … does not concern any assets of [the debtors] and being Trustee for [the debtors] does not give her any right to convey [the non-debtor affiliate's] assets."[42] By stark contrast, the Settlement here *did* concern Appellee's assets, *did* involve claims

---

[39] *In re Beck Indus., Inc.*, 479 F.2d 410 (2d Cir. 1973).

[40] *Tower Auto. Mexico, S.A. de R.L. de C.V. v. Grupo Proeza, S.A. de C.V. (In re Tower Auto., Inc.)*, 356 B.R. 598 (Bankr. S.D.N.Y. 2006) (cited inaccurately in the Opening Brief).

[41] *Equity Broad. Corp. v. Shubert (In re Winstar Commc'ns, Inc.)*, 284 B.R. 40 (Bankr. D. Del. 2002). Appellant misquotes this decision in its Opening Brief in several non-material ways.

[42] *Id.* at 52.

against Appellee (as well as non-debtors), and *did* require Appellee to exercise its rights and obligations as investment manager and party in control of MSCF GP to cause Multi-Strat to settle UBS's claims against it outside the ordinary course of business.

The proceedings in *Winstar*, *Tower*, and *Beck* do not resemble the Settlement. The settlement involved in this Court's more recent opinion in *Natixis* does.

## V.    CONCLUSION

In analyzing the issue of related-to jurisdiction in *Natixis* just six months ago, this Court has already done the work it needs to do to affirm the District Court here. The facts underlying the Settlement closely correlate to the facts pertaining in *Natixis*, with the notable exceptions that, unlike the lawsuit in *Natixis,* the Settlement involved (a) *claims asserted directly against Appellee as debtor* and (b) *directly implicated the use of property of the estate.* With these added facts, this Court need not go even as far as it did in *Natixis.* This appeal is not the "close case" this Court regarded *Natixis* to be; it is—in light of the direct claims against Appellee, the use of Appellee's property central to the Settlement, and the need to resolve UBS's claims against Appellee (and therefore Multi-Strat) in order to fully consummate the Plan—more akin to the Court's "usual related-to fare."[43]

---

[43] *Natixis*, 42 F.4th at 535.

DOCS_NY:47055.11 36027/003

It is clear that the Bankruptcy Court had at least related-to jurisdiction over the Settlement, including the provisions involving Multi-Strat. This Court should affirm the District Court's holding that the Bankruptcy Court had (at least) related-to jurisdiction to consider and approve the Settlement.

February 10, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Jordan A. Kroop (NY Bar No. 2680882)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Email: jpomerantz@pszjlaw.com
   jmorris@pszjlaw.com
   gdemo@pszjlaw.com
   jkroop@pszjlaw.com

-and-

**HAYWARD PLLC**
*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Appellee*

## CERTIFICATE OF COMPLIANCE WITH FRAP 32

1.     This document complies with the word limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, including footnotes and excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 4,450 words.

2.     This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally-spaced serif (Times New Roman) typeface at 14-point type (12-point for footnotes).

3.     Any required privacy redactions have been made under Circuit Rule 25.2.13, the electronic submission is an exact copy of the paper submission, and this document has been scanned for viruses and is free of them.

*/s/ Zachery Z. Annable*
Zachery Z. Annable

## CERTIFICATE OF SERVICE

I certify that, on February 10, 2023, the foregoing Brief of Appellee was electronically filed using the appellate CM/ECF system. I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished via CM/ECF.

*/s/ Zachery Z. Annable*
Zachery Z. Annable